UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NUMBER 18-0147** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **DARYON D. KELLEY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress filed by Defendant Daryon D. Kelley. [doc. # 27]. For reasons explained below, it is recommended that the motion be **DENIED**.

### Background[1]

On October 2, 2017, Sergeant Matthew Downhour ("Sgt. Downhour") of the West Monroe Police Department observed a 2014 Chevy Impala drive through an intersection at approximately 10 to 15 miles per hour, without stopping at the stop sign. He conducted a traffic stop of the vehicle and made contact with the driver, Defendant Daryon D. Kelley. Defendant informed Sgt. Downhour that he had no identification on his person, but stated his name was Victor G. Kelley, his date of birth was July 1, 1992, and he was driving a rental vehicle, which he had permission to drive.

Defendant provided Sgt. Downhour with the rental agreement, which listed Charles Langford as the renter of the vehicle. (*See* Ex. 1, [doc. # 35-1]). Victor Kelley was not listed as

---

[1] The underlying facts in this case are taken from Defendant's motion to suppress [doc. # 27], the Government's opposition to Defendant's motion to suppress [doc. # 30], and testimony at the November 14, 2018 suppression hearing.

an authorized driver. Sgt. Downhour tried to contact Langford, but he did not answer his phone.[2] Sgt. Downhour also contacted the manager at the rental car agency who confirmed Victor Kelley was not an authorized driver of the vehicle.

Sgt. Downhour used his mobile data terminal to look up a picture of Victor Kelley and determined that the man driving the vehicle did not match the picture. He then called for backup, and Sergeant Robert Ellis ("Sgt. Ellis") arrived at the scene to assist Sgt. Downhour. Sgt. Downhour arrested Defendant for failing to identify himself and for not having a driver's license in his possession. When the officers opened the door to the Impala and Defendant stepped out, Sgt. Downhour smelled burnt marijuana on Defendant and coming from the vehicle. Sgt. Downhour read Defendant his *Miranda* rights and placed him in his patrol car. He then searched the vehicle and found a fully loaded Ruger LC9 9mm pistol, $10,400.00 in cash, and a cigar package containing one partially smoked marijuana cigar in the center armrest compartment. Defendant denied knowledge of the items found in the center console. When asked about his name, Defendant continued to insist he was Victor Kelley.

Sgt. Downhour transported Defendant to the West Monroe Correctional Center, and once there, Defendant provided his correct personal information. It was discovered that Defendant is a convicted felon and that there was a warrant for his arrest. While Defendant was being booked, Sgt. Downhour continued asking him questions. Defendant denied knowledge of the firearm in

---

[2] At the suppression hearing, Langford testified that he did answer his phone and informed an officer that Defendant had permission to drive the vehicle but stated that he did not remember whether he had relayed this information to the Bureau of Alcohol, Tobacco, Firearms, and Explosives agent with whom he later spoke.

the vehicle but told Sgt. Downhour that all he had was a little blunt and that it is not illegal to have a gun and money.

On June 27, 2018, a federal grand jury indicted Defendant on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). [doc. # 1].

On October 16, 2018, Defendant filed the instant motion to suppress evidence seized and statements obtained from him by the Government. Defendant claims Sgt. Downhour had no probable cause or reasonable suspicion to believe a traffic offense had been committed in order to stop and search the car Defendant was driving. Defendant also claims the statements he made following his arrest should be suppressed because they were not voluntary or elicited pursuant to a valid *Miranda* waiver. [doc. # 27].

On October 30, 2018, the Government filed its response claiming Sgt. Downhour had probable cause to conduct the traffic stop, arrest Defendant, and search the vehicle, and that Defendant's post-arrest statements were obtained pursuant to a voluntary *Miranda* waiver. [doc. # 30].

A suppression hearing took place on November 14, 2018, with testimony from Sgt. Downhour, Sgt. Ellis, and Charles Langford. The matter is ripe.

## **Standard of Law**

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

3

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Evidence obtained in violation of the Fourth Amendment is generally excluded and "cannot be used in a criminal proceeding against the victim of the illegal search or seizure." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

## **Discussion**

**I.     Traffic Stop**

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Under *Terry*, the court determines the reasonableness of a traffic stop by examining "whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Lopez-Moreno*, 420 F.3d at 430 (quoting *Terry*, 392 U.S. 19-20).

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.* "[R]easonable suspicion exists when [an] officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.*

Further, the Supreme Court has noted that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted). An officer has probable cause to conduct a traffic stop when he personally observes the defendant commit the traffic violation. *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014).

Under the second prong of the *Terry* test, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). During the course of the stop, "a police officer may examine a driver's license and vehicle registration, run a computer check on the driver and the vehicle, and question the driver about a wide range of matters, including those unrelated to the purpose of a routine traffic stop." *Zavala*, 541 F.3d at 576. An officer "must ensure that the driver does not have a warrant or a suspended license, and that the vehicle is registered and not reported stolen. These checks are routine and quickly performed." *Id.* at 577. Once these checks have been

5

completed and come back clean, the detention should cease. *See Lopez-Moreno*, 420 F.3d at 431. However, "if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Id.*

Defendant claims that the Government cannot prove the stop was justified at its inception because Sgt. Downhour had no probable cause or reasonable suspicion to believe a traffic offense had been committed. [doc. # 27 at 1-2]. The Government responds that Sgt. Downhour had probable cause to stop the vehicle because he observed Defendant commit a traffic violation, specifically by failing to stop at a stop sign, a violation of La. R.S. 32:123. [doc. # 30 at 4-5]. Sgt. Downhour testified that he did not have a radar gun but was able to see Defendant drive through a clearly visible stop sign without stopping.

In this case, the traffic stop was reasonable because once he observed Defendant driving through a stop sign without stopping, Sgt. Downhour had probable cause to believe a traffic violation had occurred. During the stop, Sgt. Downhour was permitted to ask for Defendant's personal information. Once Defendant failed to produce a driver's license or demonstrate authority for driving the rental vehicle, Sgt. Downhour was permitted to continue the detention. Defendant has failed to establish that any portion of the stop was unreasonable in scope or time. Accordingly, the traffic stop did not violate Defendant's Fourth Amendment rights.

**II.    Arrest**

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (arresting driver for

driving without her seatbelt fastened, failing to secure her children in seatbelts, driving without a license, and failing to provide proof of insurance). An arrest is permissible even if the offense committed is a nonarrestable one under state law. *See Virginia v. Moore*, 553 U.S. 164, 173-76 (2008).

In this case, Sgt. Downhour arrested Defendant for driving without a license, a violation of La R.S. 32:411.1, and for resisting an officer by providing a false name and date of birth, a violation of La. R.S. 14:108. Under La R.S. 32:411.1(A)(1), a driver must have his "license in his immediate possession at all times when driving a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, parish, or municipality." A violation may "subject the person to criminal penalties of a fine of not less than ten nor more than five hundred dollars or imprisonment for up to six months, or both, and civil penalties of up to a one thousand two hundred fifty-dollar fine." La. R.S. 32:427. Under La. R.S. 14:108, a person may be arrested for resisting an officer:

> A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
>
> B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
> . . . .
> > (c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

Resisting an officer is a misdemeanor offense and provides for a penalty of up to five hundred dollars and/or a term of imprisonment of up to six months. La. R.S. 14:108(C).

7

Once Sgt. Downhour stopped the vehicle, Defendant admitted he was not in possession of a driver's license. Defendant also provided a false name and date of birth, which Sgt. Downhour discovered by using his mobile data terminal. Defendant refused to provide his actual first name, despite Sgt. Downhour asking for his name multiple times. Accordingly, Sgt. Downhour had probable cause to arrest Defendant for violating La R.S. 32:411.1 and of La. R.S. 14:108.

### III. Vehicle Search

"Law enforcement may conduct a warrantless search of an automobile if (1) the officer conducting the search had probable cause to believe that the vehicle in question contained property that the government may properly seize; and (2) exigent circumstances justified the search. In a vehicle stop on a highway, the fact of the automobile's potential mobility supplies the requisite exigency." *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (citations and internal quotation marks omitted). Probable cause to search the vehicle "depends on the totality of the circumstances viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal quotations omitted).

In this case, Sgt. Downhour testified that as he was arresting Defendant, he smelled burnt marijuana coming from Defendant's person and from inside the vehicle. During a subsequent search of the vehicle, he discovered a partially smoked marijuana cigar. Given that the marijuana cigar was partially smoked, it is reasonable that Sgt. Downhour did perceive the odor of marijuana emanating from the vehicle. The Fifth Circuit has repeatedly held that the smell of marijuana alone is enough to establish probable cause. *See, e.g.*, *McSween*, 53 F.3d at 686-87

(collecting cases); *United States v. Lork*, 132 F. App'x 34, 35 (5th Cir. 2005) ("[A] detectable odor of marijuana emanating from a vehicle provides probable cause for the search of a vehicle."); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (finding that officers detecting the "distinct odor of burnt marijuana . . . justified the subsequent search of [Defendant's] vehicle"). Therefore, although there was no probable cause to search the vehicle during the initial stop, probable cause arose once Sgt. Downhour smelled burnt marijuana emanating from the vehicle while arresting Defendant. Because Sgt. Downhour had probable cause, he did not need to obtain a warrant prior to searching the vehicle. *See United States v. Sinisterra*, 77 F.3d 101, 104 (5th Cir. 1996) ("There is no constitutional difference between seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." (citations omitted)).

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *McSween*, 53 F.3d at 687 (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). Therefore, "if there is probable cause to suspect that the vehicle contains contraband, then the search may extend not only to closed containers, but also to a car's trunk or glove compartment," or anywhere likely to contain contraband. *Id.*; *Reed*, 882 F.2d at 149. Here, once Sgt. Downhour had probable cause to search the vehicle, he was permitted to search anywhere in the vehicle likely to contain the contraband, including the center console.

Accordingly, the warrantless search of the vehicle did not violate the Fourth Amendment, and the evidence seized as a result of the search should not be suppressed.

9

**IV.     Incriminating Statements**

Certain warnings must be given before a statement made during a custodial interrogation can be admitted in evidence. *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.")). A custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Prior to any questioning, a person must be warned (1) of his right to remain silent; (2) that any statement he makes can be used as evidence against him; and (3) of his right to attorney, either retained or appointed. *Id.*

A suspect can waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444-45. A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (citations omitted). On a motion to suppress, the prosecution bears the burden of proving by a preponderance of the evidence a *Miranda* waiver and that the incriminating statement was voluntarily made6-. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004).

10

Sgt. Downhour testified that he advised Defendant of his *Miranda* warnings, and Sgt. Ellis testified that he heard them. Defendant does not dispute that he was advised of his *Miranda* warnings; rather, he claims the Government cannot prove a valid waiver or that his post-arrest statements were made voluntarily. [doc. # 27 at 3]. The undersigned disagrees. Sgt. Downhour also testified that after being given his *Miranda* warnings, Defendant refused to answer certain questions but answered others. For example, he refused to answer questions concerning the $130.00 found on his person at the correctional center or why he originally provided a false name, but he explained that the cash found in the car was from a recent car sale. Defendant also stated that all he had was a little blunt and that it is not illegal to have a gun or money. There is no indication that Defendant was intimidated, coerced, or deceived into making any statements. Further, the fact that Defendant deliberately chose to answer certain questions and declined to answer others indicates he knowingly and intelligently waived his right to remain silent.

Therefore, the undersigned finds that Defendant voluntarily waived his *Miranda* rights when he spoke with Sgt. Downhour. Accordingly, the statements he made should not be suppressed.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to suppress [doc. # 27] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 3rd day of December 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE